The next case for argument is 21-013 John Bargains v. P.C. Richard & Son Long Island, Mr. Lo Cicero. Good morning, Your Honors, and may it please the Court. This Court should reverse the Board's finding that there is a likelihood of confusion between the will of... This is Judge Wallach. I have a few questions for you. In the blue brief at 3, you say you were unaware of P.C. Richard's marks at the time you selected the WizGear mark. Was a search conducted? No, Your Honor. Okay. In the blue brief at 5, you describe $1.8 million that P.C. Richard's paid for the registered marks and Associated Goodwill as a minimal amount. How do you qualify that as minimal? What was your basis? In the context of a large nationwide retailer like P.C. Richard's, which has, I believe, 66 retail stores, and we believe that's a minimal amount in that context and in the context since it was purchased at a bankruptcy sale some years ago. Okay. Was there any evidence supporting that minimal amount? No, Your Honor. It was counsel's characterization. Okay. In the gray brief at 16, you say there's, quote, no evidence that the promotions marked as the WizDeals have changed over time. But Mr. Palmer's affidavit at JA 457 says that the products selected as WizDeals, and he says, change periodically, and that's repeated other places. Is that correct or not? Your Honor, the – yes, that is in fact what Mr. Palmer said. There's no documentary evidence that any of them change over time, and the point there that we sought to make is that – But his affidavit is – is it not? Yes, Your Honor. Okay, okay. In the gray brief at 21, you say the court can take judicial notice that the Nobody Beats the Wiz direct mark does not appear on P.C. Richard's website, quote, as of the time the instant reply brief was finalized, and it includes a link. How can we take judicial notice of that? What's our authority for doing that? And how is that proper evidence, by the way? I think – well, it is – it would not be proper evidence because, of course, it was – the time period of reference is, of course, after the close of evidence. But in the context of Internet websites and the dynamic nature of those websites, then we think it's appropriate for the court to consider the way one can view a website at a particular time. It's not more than that, Your Honor. Authority for that? No, Your Honor. I'm sorry? No, Your Honor, other than the general way in which judicial notice can be taken by a court. Okay. One other question. In the gray brief at 22, you claim that you previously raised the issue of whether P.C. Richard was using its marks for retail services, citing the one line in your trial brief which says, thus the whiz deal in no way indicates a source of retail services. Is this everything you have about having raised the issue? Yes, Your Honor. We're not pressing that point. Okay. Okay. Thanks. Go ahead. Your Honor, on the issue of likelihood of confusion, the board committed legal errors, which are subject to this court's de novo review, in at least three ways. First, it committed legal error by failing to give sufficient weight to the strength of the mark factor, since it found that the marks owned by P.C. Richards are inherently and commercially weak. Second, the board committed legal error by failing to give sufficient weight to the actual confusion factor, since it found no actual confusion despite six years of coexistence and, importantly, an ample opportunity for confusion to occur. And third, the court committed legal error by ignoring legal precedent in determining the similarity of the marks factor. Because these marks are indisputably weak, customers have learned to distinguish marks based on minute distinctions, and the marks should not have been found similar. So... Can I move you... I mean, I don't want to interrupt your chain of thought, but you left off of that the abandonment issue. Are you giving up on that, or are you still pressing that on appeal? We are pressing it on appeal, Your Honor, but we think that the board's attention is most properly focused on the likelihood of confusion issue.  Yes, Your Honor. This is perhaps the unique trademark case where the trademark owner, P.C. Richards, has not proved sales. There is no evidence of any sales based on retail store services for the whiz, and nobody beats the whiz. In fact, the board was right. And more than substantial evidence supports the board's findings that these marks are so weak that they should be given a restricted scope of protection. These marks are inherently weak. Weak as a whiz is a suggestive term connoting good quality or skill, as the board found. Suggestive marks are, of course, significantly weaker than arbitrary or fanciful marks, and the term is at best laudatory and therefore weak. The board found 37 registrations and nine websites, including the word whiz, in related product areas, and this further demonstrates that these marks are relatively weak and entitled to only natural protection. Of course, the other way you evaluate trademark strength is commercial strength, and here the board correctly found that the marks don't have any renown. P.C. Richards is barely using these marks. So far you're agreeing with the board. We're agreeing with the board's factual findings, and their factual findings that the marks are very weak and that there was no actual confusion are, of course, correct. Where we disagree is in the weakness of the mark factor, which have been given more weight. In other words, because the marks are so weak, and the weaker the marks are, then the closer an applicant's marks can come without causing a lack of confusion, and thereby invading the comparatively narrow scope of protection, as this court held in the Fifth Generation case. So you agree with the board's assessment of the various factors. As I gather, you don't contend that they missed one of the factors altogether. I think the one that they may have missed pretty much altogether, Your Honor, is the good faith. I'm sorry. I missed what you said there at the beginning. Could you repeat what you said? Yes. I would say that the one factor that we think they missed, in answer to your question, is good faith. The evidence is uncontroverted that at the time we selected the mark, we were not aware of the whiz. We were not aware that nobody beat the whiz. And the board should have, because there was evidence, uncontroverted evidence, of course, by the principal of John Fargan, that the board missed it, in your Honor's term. But the essence of your argument, as I understand it, is to focus on what you deem to be a mis-weighing of the factors by the board. Yes, they got the factors right, but no, they didn't give each of the factors that you think should have been given more weight the weight that it should have been given. That's right, Your Honor. That's correct. In particular, the marks are dissimilar. There's no question they are dissimilar. Whiz gear is one word. The whiz is two and nobody beat the whiz is four. Our mark includes the word gear, PC Richard's mark does not. Our mark begins with whiz. Whiz is the last element of their marks. Nobody beats the whiz means the whiz is cost-conscious and has unbeatable prices. Whiz gear has no such meaning. The fact, first of all, that the marks are to be, of course, considered in their entirety. That's the bedrock principle of trademark law. And so-called weak or descriptive elements of a mark, like gear in this case, are nonetheless to be considered in the likelihood of confusion analysis. And here, because there are so many third-party uses and the mark is so weak that the board simply made a mistake in its weighing, and, of course, this court has the right and the obligation to reconsider that issue de novo, that there should have been a finding that the marks are dissimilar and that, therefore, there's no likelihood of confusion. As I said earlier, this case is- If we were to find that the board was correct in concluding that the marks are similar, that is to say, rejecting the argument that whiz gear adds something significant to the term whiz, for example, and instead conclude that whiz gear is really just effectively identical to whiz, how would that affect your analysis? I think it would not affect the ultimate conclusion because, there are similarities between the marks. That's unconvertible, and we wouldn't waste the court's time by arguing that they're not. But we think that the context of such a weak trademark means that those dissimilarities are not sufficient- that those similarities, excuse me, are not sufficient to lead to a likelihood of confusion. So you would say this case would come out the same way even if the mark that you were using was whiz, or, for that matter, nobody beats the whiz? That's an interesting hypothetical, Your Honor. I don't think so. I would say the short answer to Your Honor's question is no. Okay. You don't think it would come out the same way? I don't think it would come out the same way. Okay. All right. Because what happened is that because the marks are so weak, both inherently and because of commercial weakness, that these minute differences are sufficient to demonstrate that there's no likelihood of confusion. In this case, aside from being unique because the plaintiff has never sought to prove itself, it's also unique because most cases that arise from the TTAB do not involve actual confusion as a particularly relevant factor. And that's because usually there's no opportunity for actual confusion to occur. But here the board made a specific factual finding supported by more than substantial evidence that, in fact, there was an ample opportunity for actual confusion to occur, and none has occurred for six years. Why is that? It's because the whiz marks are so weak that even the minimal differences between the registrants' marks and our marks are sufficient to preclude a likelihood of confusion. Okay. I'm going to cut you off because I think I heard the bell go off. Am I correct, Patrick? Yes. All right. Thank you. Why don't we reserve your rebuttal time and hear from the other side. Yes, Your Honor. Ms. Zutera, are you ready? Yes. Good morning, Your Honor. I would like to just jump in and start right off with the points of error that were raised here. But before I do, I would like to focus on the fact that the balancing tests that must be conducted with the DuPont factors vary from case to case, and the Board is entitled to focus on those dispositive factors that it believes are much more important based on the particular facts of each case. Here, the Board— Counsel? Yes. This is Judge Wallach. Counsel? Can you hear me? Yes, Your Honor. Okay. In the blue brief at 30, J.B. argues that you failed to present any evidence that from June 2013 to October 2015, your website, www.thewiz.com, provided information on how to order products over the phone. I couldn't find it. Is there any such evidence in the record? Yes, there is. There is the testimony of Tom Palmer, the Chief Financial Officer. Just give me a record site. Sure. If you just give me one moment, I'd be happy to find it. That was the July 2013 to 2015 timeframe, correct, Your Honor? Please. Yes, that's Appendix 464 at paragraph 43. Thank you. You're welcome. So, as I was saying, the Board can give certain factors more determinative weight, those factors that it believes are dispositive. In this case, the Board deemed the very closely related goods and services to be dispositive, similarity of the goods, and the overlap of the customers who are not sufficient. So because the goods and services travel in the exact same trade channels directed to the exact same customers and the similarity of the customers were so apparent that a likelihood of confusion was deemed to exist. Now, the first error ascribed by counsel was that he claimed that the Board found that the marks were inherently and commercially weak. However, that's really not what the Board found. What the Board did was exactly what this Court has said it needed to do in Juice Generation, which is it must assess the inherent strength of the mark, which it found the marks were arbitrary with a suggestive connotation. And the reason it found the suggestive connotation is because this Court in Juice Generation said that it must look at third-party use as well as third-party registration to determine if there might be a common understanding of what a word might mean. And parsing out all of that evidence is very critical because the strength of a mark is not a binary factor. It varies along the spectrum from very strong to very weak. This Court explained that in Juice Generation and in In Re Coors, both cited in our brief. And what the Board must do is parse out all that evidence to determine where on the spectrum the appellees' marks fall. And that's exactly what this Board did. And after conducting that analysis, which the Board analyzed the entire body of evidence, focusing on six trademarks set out in its opinion as well as ten websites, those were the ones that the Board found most relevant. The other ones were not found relevant. And as Copeland Smith, this Court fully set forth in Copeland Smith, also cited in our brief, it's very important for the Board to parse out all of the irrelevant third-party registrations and websites, which is exactly what the Board did here. And when the Board focused on the six trademarks and the nine websites, like in Re Copeland Smith, it found that there indeed was a suggestive component to the otherwise arbitrary mark. So what the Board did here was attempt to find where on the spectrum of very strong, which would be the arbitrary mark whiz. However, because of the suggestive connotation it deemed to have based upon the analysis this Court said it needed to do in juice generation, it found that it did have a suggestive connotation, and therefore it would not be entitled to a very broad scope of protection. However, it was entitled to a somewhat narrow scope of protection because of the similarity of the goods, the similarity of the marks, and because the customers overlapped. So here the Board did not find that these marks were inherently weak. Quite to the contrary, the Board found that they were not so weak that they... So what is the consequence? I mean, your friend, this is Judge Crow, your friend is arguing really about weighing the various factors, and we all agree, obviously, that the Board concluded that the mark should be given a restricted scope of protection. So was that conclusion given sufficient weight in the Board's analysis, in your view? Yes, it absolutely was. In fact, what the Board explains is that because of the likelihood that unsophisticated customers would come into contact with these very similar marks in the very same trade channels over websites, all the customers both shop by websites. The WIS customers and the WISgear customers shop on websites for these exact same goods. The Board said, yes, this is exactly the situation where these two dispositive factors, the similarity of goods and the relatedness... I'm sorry, the similarity of the marks and the very close relatedness of the goods, this is the precise situation where those dispositive factors would require protection, a restricted scope of protection, meaning not all, and the Board said this specifically, not every mark that uses the WIS in it is going to be protected, but those that are so similar that a customer could deem there be a sponsorship or an affiliation must be...they must be protected against those marks. And this Court made clear in Copeland-Smith and in Coors and in Stone-Lyons that even suggestive or highly suggestive marks are entitled to protection where there is a likelihood of confusion because of the similarity of the marks, the same trade channels, and a very high relationship between the goods and services. Those are exactly the factors we have here. Counsel, this is Judge Bryson. I think your opposing counsel said, and I hope I'm not misquoting him, but that there was no evidence of any sales that you made under these marks, presumably going back to the time that you acquired the marks. Is there any evidence to the contrary? Yes, there is evidence of sales. Of course there is because these marks were used as...first they were their own websites and then they were incorporated and brought into the overall branding on the P.C. Richard website. Go ahead. I was going to give you the appendix site for that, yes. So the sales information for how these are used are throughout the... I'll give you that first appendix site and then the sales. Appendix 457 through 468. Okay. And then I'd like to give you the precise paragraphs and the page references for sales. All right. Okay. That would be appendix 467, paragraph 55, and 56. Okay. Thank you. You're very welcome. So continuing on to the second. So it's quite clear that the board here gave due consideration to all the evidence, found where on the spectrum, as this court directed in juice generation, the strength of the mark falls, and found that because of the similarity of the marks and the close relationship of the goods and the exact same customers and trade channels, that those were the dispositive factors in this case, while considering the other factors and while giving these marks a somewhat narrow scope. As to the similarity of the marks, the board followed this court's directive in Stratus, Stoneline, and Coors. What the appellant is arguing is that different conclusions should have been drawn, and he's arguing that the exact arguments that were made and rejected by the board should just be found to be different and that a different conclusion on the facts should be drawn, which is in Stratus, this court has said, not what should be done here. That basically if the findings are based on substantial evidence, they should be sustained. And they were here. There is no doubt that the word generic, which forms the basis of the appellant's argument on similarity, the generic word gear simply does not change the commercial impression of the mark whiz gear. And so when you look at the dominant portions of whiz and whiz gear, it became very apparent that the same customers encountering similar goods, almost the same goods and services, would certainly be confused here, and that the generic word gear simply does not change that commercial impression. And finally, the actual confusion weight that counsel argues should outweigh all of the other very strong dispositive factors here. The court simply said that, yes, it does weigh against finding the likelihood of confusion. However, the other factors, again, the same customers encountering very similar goods and services, closely related goods and services in the exact same trade channel, would indeed outweigh that factor. So here what is quite clear is that the board did the exact analysis that it should have. It weighed all of the evidence. All of its findings were found on substantial evidence. The appellant's arguments here really amount simply to asking this board to find different conclusions based on the record evidence, which all of the cases, Stone-Lyon, Coors, Enrage-Hattem, Stratis, all of the cases cited in our brief say, is just simply not a valid basis for appeal. There's nothing improper about what the board did here, and it didn't follow all the precedent of this Coors to the T, in fact, did the exact analysis that this generation found that it should do. In effect, what the appellant is focusing on is a factor, the strength of the mark, which is very fact-intensive, as this court has repeatedly held in Enrage-Hattem and in Stratis and in Stone-Lyon. Again, what the board found here is not that the marks were weak. The marks were arbitrary. The board found the marks were arbitrary with a suggestive connotation and that it did not have rise to the level of fame in terms of commercial strength. Basically, what the board found was that the mark was not well-known, which is exactly the fact pattern of Stone-Lyon that this court has said was correct and that even though the mark is not well-known, that does not mean that there is not confusion where the customers are the same and the goods and services are the same and where the customers are not sophisticated. That's exactly what we have here and those are exactly the factors that the board weighed much more heavily than the lack of actual confusion. The argument that the appellant makes here that because there is a restricted scope provided to the words with that somehow that prevents likelihood of confusion here is really improper because that would mean that anytime there is a restricted scope of protection that those marks should receive no protection. In fact, the restricted scope is exactly what the board gave these marks in saying that where the goods and services are so related, the customers are the same, and the similarity of the marks is so apparent here. This is precisely the limited scope where those marks should, in fact, be protected. Okay. Thank you. Let's hear from the other side on rebuttal. Thank you, Your Honors. Very briefly, there is no dispute that the board did find that these marks were entitled to a restricted scope of protection and that was because of both their inherent and their commercial weaknesses. The evidence of sales question that was asked by the court, there's no evidence of sales in the seven-year period after which the P.C. Richards stopped recording their orders, but most important, there's no evidence of any sales that they made during the period of time when John Bargains had begun to use this mark. The court never said, by the way, that Gere was generic, only that it was descriptive, but the fact that it's descriptive doesn't, of course, as I said earlier, doesn't detract from the fact that you look at the marks in their entirety. I mean, even in a different context, the Supreme Court in book.com said that you must look at a mark in its entirety for all trademark analyses, including this one. The fact that there was no actual confusion, we think, carries the day. The proof of the pudding is in the eating. These are weak marks entitled to a restricted scope of protection. No one has ever been confused and no one is likely to be. With regard to abandonment, we just rest on our briefs, Your Honor. Thank you. We thank both sides and the case is submitted. Thank you. Thank you, Your Honor.